UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE KEHRIER,

                Plaintiff,                No. 05-CV-71338-DT

vs.                                            Hon. Gerald E. Rosen

LUMBERMENS MUTUAL
CASUALTY COMPANY,[1]

                Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR ENTRY OF JUDGMENT AND DENYING PLAINTIFF'S
MOTION TO REVERSE DEFENDANT'S ERISA DETERMINATION

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 29, 2006

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

This ERISA denial of benefits action is before the Court on the Cross-Motions of

Defendant Lumbermens Mutual Casualty Company ("Lumbermens") and Plaintiff Jane

---

[1] As originally filed, Plaintiff named "Kemper Insurance Company" as the defendant in this matter. However, on October 14, 2005, Plaintiff amended her Complaint, substituting "Lumberman's Mutual Insurance Company" for Kemper. [*See* Dkt. # 8.] The case name on the official Court file, however, was never changed. The appropriate name of Defendant is "Lumbermens Mutual Casualty Company." [*See* Defendant's Answer to Complaint, p.1.] Therefore, the Court will use "Lumbermens Mutual Casualty Company" when referring to the Defendant in this Opinion and Order.

Kehrier, respectively requesting affirmance and reversal of the ERISA plan administrator's decision terminating Ms. Kehrier's short-term disability benefit payments. Having reviewed Plaintiff's and Defendant's briefs and the Administrative Record in this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Plaintiff Jane Kehrier is a former employee of ABN AMRO North America, Inc. ("ABN AMRO"). Ms. Kehrier worked for ABN AMRO as a bank branch manager for more than twenty years, from November 1980 until June 14, 2002.[2] As an employee of ABN AMRO, Plaintiff was covered under the ABN AMRO Short Term Disability Insurance Plan (the "Plan").

## ABN AMRO'S SHORT-TERM DISABILITY INSURANCE PLAN

ABN AMRO and the ABN AMRO Short-Term Disability Plan obtained a group policy for short-term disability insurance from the Lumbermens Mutual Casualty Company ("Lumbermens"), an affiliate of Kemper Insurance Company ("Kemper"). ABN AMRO is the Plan Administrator. The Administrative Record indicates that ABN AMRO delegated its administrative authority to Kemper:

---

[2]  Ms. Kehrier was employed as a branch manager at Standard Federal Bank. Standard Federal was subsequently acquired by ABN AMRO and is now known as "La Salle Bank."

> Client [ABN AMRO] delegates to Kemper discretionary authority to make initial and first level appeal claim determinations on Client's behalf and to otherwise interpret the terms of the Plan with respect to benefits under its Plan.

[*See* Plan Documents at Defendant's Ex. 1, p. 1.]

Under the ABN AMRO Plan, "disability" is defined as follows:

> An employee is "disabled" under the Plan if he or she is unable to work at any available ABN AMRO job for which he or she is qualified because of a non-work related illness or injury. The employee must also be under the care of a qualified, appropriate physician during the disability period.

[Defendant's Ex. 2, p. 11; AR p. 46, 96, 126.][3]

The Plan further provides that [t]o be eligible for short term disability, the disability must be deemed as such by the employee's physician and the disability management company." [Defendant's Ex. 1, p. 3.][4]

PLAINTIFF'S CLAIM FOR SHORT-TERM DISABILITY BENEFITS

On June 17, 2002, Plaintiff applied for Short-Term Disability ("STD") Benefits under the ABN AMRO Plan. In requesting STD benefits, Plaintiff identified the medical condition that keeps her from working as "stress, anxiety and loss of motion in her right arm." *See* AR p. 2. She also informed the intake officer that she anticipated being able to return to work on July 8, 2002. *Id.* at p. 3. She later elaborated on her claimed disability when she was contacted by the claim manager on June 27, 2002 and explained that her

---

[3] Citations to pertinent pages of the Administrative Record in this matter are noted as "AR p. ___."

[4] ABN AMRO and Kemper contracted with Broadspire Health Services (f/k/a Natlsco, Inc.) to act as the Plan's disability management company. *See* Defendant's Ex. 1, p. 1.

father had died in May 2002 and her husband almost died in June, that she had not been getting any sleep and felt stressed and overwhelmed. *Id.* at p. 8. She further informed the claim manager that she was in counseling and was taking Xanax, Celexa and Ambian. *Id.*

Plaintiff's primary care physician, Dr. Amy Rothberg, a specialist in internal medicine, submitted medical information in support of Plaintiff's claim for benefits. Dr. Rothberg stated that Ms. Kehrier is suffering with depression and recommended that Plaintiff take a psychiatric disability leave from work based upon Plaintiff's self-report of feeling "agitated" and "out of control." *Id.* at p. 9. However, Dr. Rothberg noted in her June 27, 2002 Behavioral Health Clinician's Statement (referred to herein as the "clinician's assessment") that there was no impairment in Plaintiff's cognitive functioning -- she was able to write a sentence from the doctor's dictation, able to follow a three-step command, able to read a narrative paragraph and report the main concept of the passage, and able to perform mathematical operations. *Id.* She had no delusional or suicidal ideations and no demonstrated panic attacks. *Id.* at pp. 9-10. Dr. Rothberg further noted that Plaintiff exhibited no evidence of agitation or aggressive behavior. *Id.*

Upon her review of the clinician's assessment submitted by Dr. Rothberg, the claims manager noted that Dr. Rothberg's report and medical records failed to demonstrate that Ms. Kehrier's depression was disabling in nature, and pointed out that the doctor "has not submitted a mental status exam, psychological testing, or objective observable data that would clinically document the presence and intensity of [Plaintiff's] symptoms that would support an inability to perform the core elements of her own

4

occupation." *Id.* at 12. Therefore, the disability manager determined that Dr. Rothberg's information did not support Plaintiff's claim of a disability *Id.* at 12, 17.

Plaintiff was informed of the disability claims manager's determination on July 1, 2002 and was advised that unless sufficient medical evidence of a disabling condition was submitted by July 8, 2002, her claim for STD benefits would be denied. *Id.* Plaintiff then requested that her counselor, Sharon Garant, a clinical social worker, provide further medical information to Kemper.

Ms. Garant provided Kemper with her record and assessment of her July 1, 2002 examination of Ms. Kehrier. The claims manager determined that these medical records clinically substantiated impairments "in the emotional and cognitive arenas" that would prevent Plaintiff from performing the core elements of her job. Therefore, the Plan Administrator granted Plaintiff's claim for STD benefits from June 24 through July 31, 2002.

Upon a follow-up contact with Ms. Garant on July 25, 2002, Kemper was advised that Ms. Kehrier's condition had significantly deteriorated and that, as a result, Ms. Garant had referred Plaintiff to a psychiatrist for medical management. *Id.* at 24. Upon receipt of the counseling records supporting Ms. Garant's report, Kemper determined that Ms. Kehrier's STD benefits should be continued through the end of August 2002, and scheduled a follow-up with Plaintiff's medical providers on August 21st. *Id.*

Ms. Garant was, accordingly, contacted again on August 21, 2002. She provided

5

updated records which continued to support disability. Ms. Garant, however, informed the Administrator that Plaintiff would be released to return to work on September 9, 2002. *Id.* at 27-28. Therefore, Plaintiff's STD benefits were extended through that date. *Id.*

Plaintiff returned to work on September 9 and, accordingly, her STD benefits were terminated. Although she returned to work as scheduled, Plaintiff believed she may have come back too soon. She complained of blurred vision and not sleeping at night "due to pressure and stress." *Id.* at 28-30. After less than two weeks, on September 23, 2002, Plaintiff was off work again. Her STD claim file was, accordingly, reopened, and updated records to substantiate a claim of disability were requested from Plaintiff's counselor, Sharon Garant. *Id.* at 32-37.

Ms. Garant provided her Behavioral Health Clinician's Statement on September 25, 2002. However, the assessment provided in the clinician's statement did not bear out any disabling psychological or other impairment. She indicated in her report that she had examined Ms. Kehrier on September 23, 2002 and that that examination showed that Plaintiff was not cognitively impaired and that her memory functions were within normal limits. *Id.* at 34. Ms. Garant further noted that Plaintiff did not exhibit any symptoms of a panic attack, had no suicidal ideations and exhibited appropriate impulse control. *Id.* at 37. Although Ms. Garant indicated in her assessment that Plaintiff's depression had increased, she only recommended that Plaintiff stay home from work one day, September 23, 2002, the date of her examination of Plaintiff. *Id.*

Based upon the updated counseling records from Ms. Garant, the Administrator

6

concluded that the updated counseling records from Ms. Garant did not support a claim of disability. Accordingly, on October 3, 2002, Kemper informed Plaintiff that no benefits would be approved unless additional supporting information was provided. *Id.* at 38. Plaintiff responded to the information by informing Kemper that she had appointments scheduled with another therapist, a psychologist, Dr. Elaine Tripi, PhD, and with a psychiatrist, Dr. Ernesto Figueroa, M.D. *Id.* She was, accordingly, advised to have these providers submit any medical evidence supporting her claim of disability to Kemper. *Id.*

When, as of October 22, 2002, no information was provided by either Dr. Tripi or Dr. Figueroa, Plaintiff's request for STD benefits from September 23, 2002 and thereafter was denied. *Id.* at 41-42.

<u>FIRST-LEVEL APPEAL</u>

On November 19, 2002, Plaintiff appealed the denial of her request for continued STD benefits. In this first-level appeal, the Administrator's file, including all of the records and reports received from Plaintiff's medical providers, were submitted for peer review by a psychologist, Dr. Lawrence Burstein, PhD. Included in the records reviewed by Dr. Burstein were a copy of Plaintiff's job description; the treatment notes and the Behavioral Health Clinician Statements completed by Plaintiff's primary care physician, Dr. Amy Rothberg and Plaintiff's counselor, Sharon Garant, CSW, respectively; as well as documented script from Dr. Ernesto Figueroa, the psychiatrist Plaintiff saw on October 9, 2002.

In performing his review, Dr. Burstein paid particular attention to the Behavioral Health Clinician's Statement and Addendum, as well as treatment notes submitted by Plaintiff's clinical social worker, Sharon Garant, who was the mental health provider who treated Plaintiff throughout the periods both prior to and after her September 9, 2002 return to work. Dr. Burstein summarized the content of these medical records stating, in pertinent part, as follows:

> Ms. Kehrier is reported to have a flat affect, but there were no indications of anxiety or panic or other symptoms which would preclude her from performing the core elements of her occupation. She is able to express her current circumstances and respond to direct questions appropriately, and her psychomotor activity is described as unremarkable. She is able to present with appropriate dress and hygiene and her impulse control is described as appropriate. She has apparently been regaining lost weight and is able to pay bills and drive. Although there was some disturbance in sleep and a report of withdrawal, this form is lacking in examination findings, which would substantiate that Ms. Kehrier is unable to perform the core elements of her occupation from a psychological perspective. Despite the lack of examination findings, Ms. Kehrier is reported to be unable to perform the core elements of her occupation. **The 10/07/02 note from Ms. Kehrier's social worker indicates that the determination regarding Ms. Kehrier's ability to perform the core elements of her occupation is based totally upon Ms. Kehrier's own opinion. There were no examination findings presented or observations of the social worker to substantiate Ms. Kehrier's subjective perceptions.** Similarly, the clinical notes also contain claimant self reports and clinical impressions, but are lacking in examination findings to substantiate impairments in functioning.

[*See* AR p. 124 (emphasis added).]

Based upon his review of the record, Dr. Burstein concluded that "the submitted medical documentation was lacking in examination findings that Ms. Kehrier would have been unable to perform the core elements of her occupation, from a psychological

perspective, during the period in question." *Id.* Dr. Burstein elaborated on what would have been sufficient to substantiate her mental health care providers' conclusions:

> In order to substantiate that Ms. Kehrier was unable to perform the core elements of her occupation, from a psychological perspective, her providers would have to submit examination findings which document the presence of impairments. Examples of such findings would be behavioral observations, including the frequency, duration and intensity of symptoms observed, the results of a formal mental status examination, or performance based tests of psychological functioning with standardized scores.

*Id.*

Finding such documentation lacking, Dr. Burstein concluded that the medical evidence submitted by Plaintiff in her first-level appeal "fails to support [a] functional impairment that precludes work." *Id.*

Based upon Dr. Burstein's peer review, Kemper upheld the denial of Plaintiff's request for STD benefits after September 23, 2002. *See* AR 126. Plaintiff was informed in writing of Kemper's first-level review decision to uphold its original decision denying continued benefits on January 2, 2003. *Id.* at 126-127. She was also advised in that January 2 letter of her right to have her appeal further reconsidered and the time-limits for doing so. *Id.* at 127.

SECOND-LEVEL APPEAL

On February 17, 2003, Plaintiff submitted a letter initiating the second-level (final) appeal of the denial of her request for continued benefits. In addition to the records reviewed in her first-level appeal, Plaintiff also submitted for review in her second-level appeal additional treatment records from Dr. Amy Rothberg and Sharon Garant, CSW,

documenting their treatment of Plaintiff through January 14, 2003; a Psychological Assessment and Employability Evaluation of Plaintiff done by Dr. Elaine Tripi, PhD on January 14, 2003; overdraft notices concerning Plaintiff's checking account dated July 9, 2002 through January 16, 2003; and Incident Reports and an e-mail message dated February 21 and 22, 2002 concerning an incident involving suspicious behavior of a bank customer observed by Plaintiff, i.e., four months before she went on medical leave in June 2002.

In this second-level appeal, the above-records and Dr. Burstein's report were submitted for peer review by two different medical care professionals -- Dr. Robert Dawes, Psy.D., a clinical psychologist, and Dr. Wendy Weinstein, M.D., a specialist in internal medicine.

Dr. Dawes reviewed all of the records of Plaintiff's psychologists, counselor and psychiatrist and discussed the records in detail in his four-page report. In Dr. Dawes opinion, Ms. Garant's Behavioral Clinician Statement and the previous records reviewed in August and September 2002 "do not document a severity of illness that would preclude the claimant from functioning at her job." *See* AR 219.  Dr. Dawes then carefully analyzed the documents post-dating Ms. Garant's Clinician's Statement and also found them lacking in quantifiable examination findings:

> With regard to documents subsequent to the Behavioral Health Clinician Statement which again are provided by the claimant's clinical social worker, there is more information regarding the claimant's perception of inability to perform work.  However, there is a lack of examination findings to support the claimant's conclusion.

On 9/23/02, the claimant was described as worse with reports of low energy, looking very pale and demonstrating lack of motivation. There are no quantifiable examination findings within this exam.

On 10/7/02, the claimant returns to see her clinical social worker who indicates the claimant is not sleeping and obtaining three hours at a time as all as isolating. There is no formal mental status exam to ascertain whether the claimant's self-reported sleep disturbance is actually impairing attention and concentration.

On 10/9/02, Kemper received a prescription note from Dr. Ernesto Figueroa MD, who indicates the claimant has been recommended to have a medical leave from 9/24/02 until 11/29/02. Unfortunately, Dr. Figueroa has not provided any psychiatric or medical information that would support this leave of absence.

The next note I have is a note dated 10/28/02. This indicates the claimant's condition is the same, however, the claimant is sleeping well. There are reports that the claimant has difficulty staying focused and on topic. However, there are no exam findings to support this. There is also mention that the claimant is dealing with PTSD, which apparently is a diagnosis that her husband carries.

On 10/7/02, I have a letter from Sharon Grant [sic] who indicates that the claimant has deteriorated in the past week and a half and that the claimant has reported that she is only able to drive short distances. Her husband is now paying the bills which she can no longer concentrate and focus on. There are also indications that the claimant believes she is able to write a narrative paragraph after reading a report. . . . In my opinion, this letter again presents an opinion, via the clinical social worker, however, no examination findings have been presented. The only examination to date is from Sharon Grant [sic], which is the Behavioral Health Clinician Statement, which indicates an absence of impairments.

Lastly, I have a 2003 psychosocial assessment performed by Elaine M. Tripi, PH.D., licensed psychologist. The report is a two-page report that covers areas of personal history, employment history and medical history. There is also a section describing the claimant's complaints. In this area, the claimant reported to Dr. Tripi that she experiences panic attacks at least once a day. The severity of these panic attacks and the duration are not described. There is a lack of specificity in the document to actually

>determine if the claimant meets diagnostic criteria for panic attacks. . . .

>There is a notation indicating that the claimant had limited grooming, however, this is not objectively clarified. There are also reports that the claimant feels side effects of her medication and reports fatigue and "foggy thinking." However, Dr. Tripi fails to examine the claimant and assess whether the claimant's attention and concentration impairment can be objectified. . . .

>. . . It is noted that Dr. Tripi indicates that the claimant is experiencing secondary posttraumatic stress disorder. I am unsure how the claimant is categorized as experiencing this disorder without a more detailed analysis from Dr. Tripi. It is noted that the claimant does not indicate classic symptomology of posttraumatic stress disorder which would be avoidance, hyperarousal and reexperiencing of a traumatic event. . . .

[AR 219-220.]

Dr. Dawes concluded by stating:

>In summary, . . . I have thoroughly reviewed the records and have found the file void of examination findings supporting impairments in cognitive functioning that would preclude the claimant from returning to work.

*Id*. at 220.

Dr. Wendy Weinstein, M.D., a specialist in internal medicine, also conducted a peer review of the records submitted by Plaintiff's health care providers. Dr. Weinstein's focus was principally upon Plaintiff's secondary complaints of "chronic right shoulder pain with difficulty sleeping." [AR p. 0222.] Dr. Weinstein noted that Plaintiff complained of shoulder pain from June 2002 through January 2003. She noted, however, that there were no musculoskeletal or neurologic examination findings documented. *Id.* Further, although examinations of the shoulders revealed pain on overhead abduction on the left side, the records submitted showed that all other ranges of movement were well

maintained, that there was no crepitus, inflammation or fluid, and Plaintiff's right side was entirely normal. *Id.*

Dr. Weinstein also noted that x-rays of Plaintiff's lumbar spine were essentially normal and that Plaintiff was referred to physical therapy in December 2002. *Id.* She further noted that although Plaintiff was noted to have continuing shoulder pain on January 6, 2003, there was no documentation or physical examination findings concerning her January complaints. *Id.* Dr. Weinstein, therefore, opined:

> . . . [T]he claimant has a long standing history of shoulder pain and discomfort which has not been associated with any significant physical examination findings which would cause a function impairment from the claimant's work as a branch manager. She has been noted to have full range of motion of her shoulder and no loss of muscle strength or neurologic changes. The complaint of shoulder pain is a subjective complaint and the physical examination findings have not documented a limitation that would preclude her from working. The claimant's hypertension has been well controlled and there have been no other physical findings that would substantiate a functional impairment from the claimant's job.

*Id.* at 222-223.

After considering Dr. Dawes' and Dr. Weinstein's reviews, the ABN AMRO Appeal Review Committee upheld the original decision of the Plan Administrator denying Short Term Disability Benefits as of September 23, 2002. Plaintiff was advised of this decision in writing on April 4, 2003. The Appeal coordinator explained to Plaintiff in this letter:

> In conducting its review, the ABN AMRO NORTH AMERICA, INC. Benefit Committee has determined that you have failed to submit medical proof (i.e., physical examination findings, diagnostic testing, mental status

examination findings, psychological testing, psychiatric evaluations and treatment records, hospitalizations, etc.,) that indicates you are disabled from performing the essential duties of your job. . . .

The second level review decision is final and therefore not subject to further administrative review.

AR pp. 88-89.

Having exhausted her administrative appeal rights, Plaintiff filed this ERISA action.

### III.  DISCUSSION

A.   STANDARD AND SCOPE OF JUDICIAL REVIEW IN ERISA CASES

The Supreme Court has ruled that the standard of review in ERISA cases is *de novo* unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or construe plan terms:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989). *See also, Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). Alternatively, "where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review." *Williams v. International Paper Co.,* 227 F.3d 706, 711 (6th Cir. 2000).

14

Here, the parties are in agreement that the standard of review is the arbitrary and capricious standard because the Plan Administrator and its delegatee, Kemper, had the discretionary authority to make claim determinations and to otherwise interpret the terms of the Plan with respect to benefits under the Plan.  *See* Defendant's Ex. 1, p. 2.

Inasmuch as the standard of review is the arbitrary and capricious standard, this Court's review of the Administrator's decision is based solely upon the administrative record.  *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

B	THE PLAN ADMINISTRATOR DID NOT ACT ARBITRARILY OR CAPRICIOUSLY IN DENYING PLAINTIFF'S CLAIM FOR SHORT-TERM DISABILITY BENEFITS BEYOND SEPTEMBER 23, 2002.

The arbitrary and capricious standard is a highly deferential one.  *See Killian v. Healthsource Provident Adm'rs, Inc*., 152 F.3d 514, 520 (6th Cir.1998) (quoting *Yeager v. Reliance Standard Life Ins. Co*., 88 F.3d 376, 380 (6th Cir.1996)) ("where, as here, the plan administrator is given the discretionary authority to determine eligibility for benefits or to construe the plan terms, 'we review the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'")  Under the arbitrary and capricious standard, a court will uphold a plan administrator's benefit determination if that determination was rational in light of the plan's provisions.  *Daniel v. Eaton Corp*., 839 F.2d 263, 267 (6th Cir. 1987), *cert. denied*, 488 U.S. 826 (1988).  Stated differently, "when it is possible to offer a reasoned explanation, based on evidence for a particular outcome, the outcome is not arbitrary and capricious."  *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S.

905 (1990) . *See also*, *Marchetti v. Sun Life Assurance Company*, 30 F. Supp. 2d 1001, 1008 (M.D. Tenn. 1998).

Here, the administrative record more than abundantly supports the conclusion that the Administrator's decision was both reasonable and "rational in light of the plan's provisions."

The Administrator's stated reason for denying Plaintiff's claim for benefits was that her medical records, including the records submitted in connection with her appeal, did not substantiate Plaintiff's claim that she was disabled and unable to work. In seeking reversal of the Administrator's decision, Plaintiff argues that Defendant completely disregarded the opinions of Dr. Rothberg and Clinical Social Worker Garant despite the fact that they are Plaintiff's long-time medical care providers.

Even a cursory review of the Administrative Record shows how far Plaintiff's argument is from the truth. The record establishes that at every level of consideration, the opinions of all of Plaintiff's providers were considered. However, all of these opinions were found to be lacking in objective findings or data which supported finding an impaired level of functionality which would prevent Plaintiff from performing the duties of her job. As numerous courts have held, an administrator's decision to deny benefits is reasonable and rational in the absence of objective medical evidence to substantiate the claim of disability. *See, e.g. Wilkins v. Baptiste Healthcare System, Inc., supra*, 150 F.3d at 619 (in the absence of objective evidence supporting plaintiff's claim of disability, administrator properly denied claim); *Dutton v. UNUM Provident Corp.*, 170 F.Supp.2d

16

754 (W.D. Mich. 2001) (administrator's decision to deny benefits rational where no evidence or objective data supported claim of disability based on diagnosis); *Renfro v. UNUM Life Ins. Co.*, 920 F. Supp. 831, 839 (E.D. Tenn. 1996) (list of diagnosed conditions, standing alone, does not satisfy burden of proving disability);  *Davis v. Broadspire Services, Inc.*, 2006 WL 752602 (E.D. Mich. 2006) (where none of the doctors who treated plaintiff provided any objective medical evidence to substantiate their disability diagnosis plan administrator's denial of disability benefits was rational); *McClanahan v. The Hartford Life and Acc. Ins. Co.*, 2000 WL 1923503 (E.D. Mich. 2000) (defendant's denial of plaintiff's benefits was reasonable and rational in the absence of independent, objective diagnostic tests to corroborate the diagnosis of chronic fatigue syndrome).

Furthermore, contrary to Plaintiff's assertions, a plan administrator is not required to accord any special deference to the opinions of treating physicians. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 831 (2003). Moreover, the plan administrator is not required to provide any particular explanation for rejecting the opinion of a treating physician. *Id.* at 831. As the Supreme Court stated in *Nord*,

> Courts have no warrant to require administrators automatically to accord special weight to the opinions of the plaintiff's physician; nor may courts impose on plan administrators a discrete burden of explanation when the credit reliable evidence that conflicts with a treating physician's evaluation.

*Nord* at 825, 834.[5]

---

[5] Plaintiff urges the Court to issue a ruling that the Supreme Court's decision in *Nord* is "overbroad and contrary to legislative intent" to the extent that it rejects the

For all of the foregoing reasons, the Court finds that the Plan Administrator did not act arbitrarily or capriciously in its consideration of, and its ultimate decision denying Plaintiff's claim for Short-Term Disability Benefits after September 23, 2002.  To the contrary, the Administrator's decision was both reasonable and rational in light of the Plan provisions.

---

"treating physician rule" in ERISA cases.  Of course, it is axiomatic that as a district court, this Court is without authority to disregard or overrule a Supreme Court decision.

CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motion for Entry of Judgment is GRANTED and Plaintiff's Motion to reverse the Administrator's decision is DENIED.

                                                  s/Gerald E. Rosen
                                                  Gerald E. Rosen
                                                  United States District Judge

Dated:  September 29, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2006, by electronic and/or ordinary mail.

                                                  s/LaShawn R. Saulsberry
                                                  Case Manager